```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                   FORT MYERS DIVISION
```

REMEMBRANCE GROUP, INC., a
Delaware corporation

       Plaintiff/Counter-
       Defendant,

v.                                    Case No: 2:21-cv-675-JES-MRM

TROY K. CENTAZZO,
individually,

       Defendant/Counter-
       Plaintiff.

_____

## OPINION AND ORDER

This case comes before the Court on counter-defendant Remembrance Group, Inc.'s Motion to Dismiss Amended Counterclaims (Doc. #42) filed on March 3, 2022. Counter-plaintiff Troy Centazzo filed a Response (Doc. #44) on March 24, 2022. For the reasons set forth, the motion is **granted in part** and **denied in part**.

**I.**

"A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint." Geter v. Galardi S. Enterprises, Inc., 43 F. Supp. 3d 1322, 1325 (S.D. Fla. 2014) (quotation omitted). Under Federal Rule of Civil Procedure 8(a)(2), a complaint or counterclaim must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555; see also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a counterclaim as true and take them in the light most favorable to the plaintiff, Erickson v. Pardus, 551 U.S. 89, 94 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible. Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). When an exhibit attached to a counterclaim contradicts general and conclusory allegations, the exhibit governs. Gill as Next Friend of K.C.R.

2

v. Judd, 941 F.3d 504, 514 (11th Cir. 2019).  Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

## II.

As alleged in the Amended Counterclaim (Doc. #39):  In December 2012, counter-plaintiff Troy K. Centazzo (Centazzo), a California citizen, and non-party Barry Bedford (Bedford) co-founded counter-defendant Remembrance Group, Inc. (Remembrance), a Delaware corporation with a principal place of business in Naples, Florida.  (Id. ¶¶ 1, 2, 14.)  The purpose of Remembrance was to acquire, operate, and manage funeral homes.  (Id. ¶ 14.)  Centazzo owned 40% and Bedford owned 60% of Remembrance.  (Id. ¶ 15.)  Remembrance is also known by the brand name "the Premier Group." (Id.)  Centazzo served as President of Remembrance from December 2012 until April 21, 2017.  (Id. ¶ 17.)

### A. The Operating Affiliates & Option Agreements

Under Centazzo's leadership, Remembrance thrived.  (Id. ¶ 18.)  Pertinent to the current litigation, while Centazzo was president, Remembrance acquired six funeral home and death care businesses (the "Operating Affiliates").  (See generally, id. ¶¶ 20-32.)  To acquire the Operating Affiliates, Centazzo personally guaranteed SBA loans.  (E.g., ¶ 24.)  In total, Centazzo "issued

3

personal guarantees on borrowings totaling approximately $18 million" for the Operating Affiliates.  (Id. ¶ 28.)

The Operating Affiliates were set up as individual companies.  As of the date of the Amended Counterclaim, Centazzo owned between 15% and 85% of the six Operating Affiliates.  (Id. ¶ 29.)

As part of the acquisition of each Operating Affiliate, Remembrance, Centazzo, and any other individual members of the particular Operating Affiliate executed a Management Services Agreement and an Option Agreement.  (Id. ¶ 81; see also Docs. ## 1-1 through 1-5.)[1]  "The Option Agreements established a mechanism for future consolidation of the [Operating Affiliates] that make up Remembrance, which was critical to investors involved in the transactions."  (Doc. #39, ¶ 85.)

Relevant to the Amended Counterclaim, the Option Agreements provided the following:

---

[1] The Option Agreements are, for the most part, the same. (Compare Docs. #1-1 through 1-5.)  The relevant provisions to the parties' dispute also appear to be the same and the parties point out no relevant differences.  So, like the parties, the Court discusses the Option Agreements together, and for purposes of this Order, cites to the Option Agreement for Premier Funeral Management Group II, LLC.  (Doc. #1-1.)

- Remembrance had an "exclusive right and option to purchase all of [Centazzo's] Membership Interests" in the Operating Affiliate. (Doc. #1-1, p. 2 § 2.)[2]

- Remembrance could exercise its option to purchase Centazzo's interests by providing written notice once (a) the principal and interest of the Operating Affiliate's SBA loan was paid <u>or</u> the SBA lender consented to the transfer of interests; <u>and</u> (b) all necessary government approvals were obtained. (<u>Id.</u> p. 3 § 4.)

- If Remembrance exercised its option, the parties agreed to close the purchase of Centazzo's interests within 5 days of written notice or by another date designated by Remembrance. (<u>Id.</u>)

- On the closing date, Remembrance, the Operating Affiliate, and Centazzo "shall execute an Assignment, Assumption, and Admission Agreement, that, among other things, transfers the Membership interest to [Remembrance] and admits [Remembrance] as the only member of [the Operating Affiliate.]" (<u>Id.</u>)

---

[2] For consistency and ease of reference, the Court uses the page numbers stamped by the Court's electronic filing system (upper right-hand corner).

5

B.  **The Advisory Services Agreement**

In 2017, Centazzo transitioned from Remembrance's President to a part-time, Senior Advisor consulting role. (Doc. #39, ¶ 33.) As part of the transition process, Centazzo and Remembrance executed an Advisory Services Agreement on April 21, 2017. (Doc. #22-1.) Pertinent to the Amended Counterclaim, Section 6 of the Advisory Services Agreement provided Centazzo with "Board Observer Rights." (Id. p. 4 § 6.) As a Board Observer, Centazzo had no voting rights, but he was "permitted to attend and participate in all meetings of the Board of Managers." (Id.) Remembrance was required to "notify [Centazzo] in writing of the date and time for each general or special meeting of the Board of Managers or of the adopting of any resolutions by written consent [] and each meeting of the finance committee, if any." (Id.) Remembrance was also required to deliver to Centazzo "[a]ll materials delivered to the Board of Managers of the finance committee, if any, in connection with any action by the Company or discussion regarding external financing." (Id.)

C.  **Redemption Agreement**

Also in 2017, as part of Centazzo's transition from President, Centazzo alleges that he and Remembrance's management "began negotiating a comprehensive redemption of all of Centazzo's ownership interest" in Remembrance and the Operating Affiliates. (Doc. #39, ¶¶ 48-49.) In 2017 and 2018, "[n]umerous third-

6

parties," both legal and accounting advisors, "were involved in the negotiation of the framework for the redemption transaction." (Id. ¶ 52.) Centazzo alleges that the parties eventually reached an oral contract for the redemption of his interest in both Remembrance and the Operating Affiliates (the "Redemption Agreement"). (Id. ¶ 56.) Without describing the terms, Centazzo alleges that the "terms of the Redemption Agreement were created by the accounting firm Windes LLP, which Centazzo offered to Remembrance and Remembrances accepted. The agreed upon framework included a comprehensive and specific set of essential terms." (Id. ¶ 56.)

### D. Procedural History

On September 13, 2021, Remembrance filed a five-count Complaint (Doc. #1) against Centazzo asserting that Centazzo breached the Option Agreements by refusing to transfer his ownership to Remembrance after Remembrance exercised its options under the agreements. On November 10, 2021, Centazzo responded with his Answer and Affirmative Defenses. (Doc. #22.) Centazzo also asserted a six-count counterclaim (id.), which the Court dismissed without prejudice as a shotgun pleading and granted leave to amend (Doc. #38). Centazzo then filed his Amended Counterclaim. (Doc. #39.) Remembrance moves to dismiss the Amended Counterclaim in its entirety for failure to state a claim. (Doc. #42.)

**III.**

**A.   Choice of Law**

A federal court sitting in diversity "will apply the conflict-of-laws rules of the forum state." Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc., 485 F.3d 1233, 1240 (11th Cir. 2007) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). "Under Florida law, a court makes a separate choice of law determination with respect to each claim under consideration and must characterize the legal issue and determine whether it sounds in tort, contracts, property law, or some other area of the law." T.T. Int'l Co., Ltd v. BMP Int'l, Inc., No. 8:19-CV-2044-CEH-AEP, 2022 WL 971950, at *5 (M.D. Fla. Mar. 31, 2022) (citing Grupo, 485 F.3d at 1240).

Under Florida choice-of-law rules, "[a]n agreement between parties to be bound by the substantive laws of another jurisdiction is presumptively valid." Southeast Floating Docks, Inc. v. Auto-Owners Ins. Co., 82 So. 3d 73, 80 (Fla. 2012). Count I of the Amended Counterclaim is brought pursuant to the Advisory Services Agreement, which includes a California choice-of-law provision. (Doc. #22-1, § 14.4). Count III of the Amended Counterclaim is brought pursuant to the Option Agreements, which provide that each agreement will be construed in accordance with the choice-of-law provision of the Operating Agreement for each Operating Affiliate. (E.g., Doc. 1-1, p. 5.) Although the Court was not provided with

8

the Operating Agreements, both parties follow Delaware law on this claim. Thus, pursuant to the contract provisions, the Court will apply California law to Count I and Delaware law to Count III.

Counts II (breach of oral agreement), IV (promissory estoppel), V (unjust enrichment), and VI (quantum meriut) are all contractual or quasi-contractual in nature. For these claims, the Court applies the "lex loci contractus" rule. E.g., T.T. Int'l, 2022 WL 971950, at *5. "Under this rule, an implied-in-law contract is created where the last act necessary to complete the contract is made," and the Court follows that state's substantive law. ThunderWave, Inc. v. Carnival Corp., 954 F. Supp. 1562, 1564 (S.D. Fla. 1997) (citing Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110, 1119 (11th Cir. 1996)).

The pleadings suggest that the underlying conduct between the parties which gives rise to the dispute is tied to business actions in Florida. Both parties also apply Florida law to these claims. Cont'l Cas. Co. v. City of Jacksonville, 283 F. App'x 686, 689 (11th Cir. 2008) ("The parties have not objected [to the application of Florida law], and we therefore examine the various claims asserted on appeal under Florida law."); Cavic v. Grand Bahama Dev. Co., 701 F.2d 879, 882 (11th Cir.1983) ("Because the parties did not raise any conflict of laws issue in the district court and do not raise it on appeal, under applicable conflict of laws principles the law of the forum (Florida) would govern the

substantive issues due to the absence of facts justifying the application of the law of some other jurisdiction.") (cleaned up). The Court, therefore, applies Florida law to Counts II, IV, V, and VI of the Amended Counterclaim.

    **B.**    **Count I – Breach of Advisory Services Agreement**

In Count I of the Amended Counterclaim, Centazzo alleges that Remembrance breached the Advisory Services Agreement. (Doc. #22-1.) There are four elements to a breach of contract claim under California law: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis W. Realty, LLC v. Goldman, 250 P.3d 1115, 1121 (Cal. 2011).

Remembrance argues that Centazzo fails to allege any recoverable damages under the Advisory Services Agreement.

> Under [California] Civil Code section 3300, a party may recover for a breach of contract a sum that will compensate it for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. In the law of contracts, the theory is that the party injured by a breach should receive as nearly as possible the equivalent of the benefits of performance. The aim is to put the injured party in as good a position as it would have been had performance been rendered as promised. This aim can never be exactly attained yet that is the problem the trial court is required to resolve. Where the fact of damages is certain, the amount of damages need not be calculated with absolute certainty. The law requires only that some reasonable basis of computation be used, and

10

> the result reached can be a reasonable approximation.

JMR Constr. Corp. v. Env't Assessment & Remediation Mgmt., Inc., 198 Cal. Rptr. 3d 47, 59 (2015) (cleaned up).

Centazzo sufficiently alleges damages. Centazzo alleges that Remembrance breached the Advisory Services Agreement by "failing to provide Centazzo with written notice of any Board of Managers meetings or to provide him with any Board of Managers or finance committee materials since mid-2017." (Doc. #39, ¶ 45; see also Doc. #22-1, p. 4.)  He then alleges that he "suffered damages, that include, without limitation, expenses incurred to learn about the company's business." (Id. ¶ 46.)  As pled, these damages are a natural result of Remembrance's alleged failure to comply with the Advisory Services Agreement.  The motion is denied with respect to Count I of the Amended Counterclaim.

  **C. Count II – Breach of Redemption Agreement**

In Count II of the Amended Counterclaim, Centazzo alleges that Remembrance breached the oral Redemption Agreement.  Under Florida law, "[t]o state a cause of action for breach of an express oral contract a complaint need only allege facts that establish the existence of a contract, performance by the plaintiff, a material breach of the agreement by the defendant, and resulting damages." Haskel Realty Grp., Inc. v. KB Tyrone, LLC, 253 So. 3d 84, 85 (Fla. 2d DCA 2018) (citations omitted). The alleged facts,

11

if taken as true, must "demonstrate that the parties mutually assented to 'a certain and definite proposition' and left no essential terms open." Rubenstein v. Primedica Healthcare, Inc., 755 So. 2d 746, 748 (Fla. 4th DCA 2000) (citing W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc., 728 So.2d 297 (Fla. 1st DCA 1999); then citing Carole Korn Interiors, Inc. v. Goudie, 573 So.2d 923 (Fla. 3d DCA 1990)). "The fact that nonessential terms remain open is not fatal to an oral contract." St. Joe Corp. v. McIver, 875 So. 2d 375, 381 (Fla. 2004).

Remembrance argues that Centazzo fails to allege a breach of an oral contact because Centazzo does not allege any essential terms of the purported Redemption Agreement. The Court agrees. Centazzo broadly alleges that the "essential terms" of the Redemption Agreement were created by an accounting firm and accepted by Remembrance. Centazzo, however, does not actually detail any terms. The motion to dismiss Count II of the Amended Counterclaim is granted and Count II is dismissed without prejudice. Centazzo will be granted one final opportunity to amend this count, if warranted.

    **D.  Count III – Breach of Covenant of Good Faith & Fair Dealing of Option Agreements**

In Count III of the Amended Counterclaim, Centazzo alleges that Remembrance breached the covenant of good faith and fair

12

dealing under the Option Agreements. (E.g., Doc. 1-1, p. 5.)

Under Delaware law:

> The implied covenant of good faith and fair dealing inheres in every contract and requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain. To state a claim for breach of the implied covenant, the Plaintiffs must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff. Additionally, to survive a motion to dismiss, Plaintiffs must allege that the decision was motivated by an improper purpose.
>
> Imposing an obligation on a contracting party through the covenant of good faith and fair dealing is a cautious enterprise and instances should be rare, especially when the contract easily could have been drafted to expressly provide for it. It must be clear from what was expressly agreed upon that the parties who negotiated the express terms of the contract would have agreed to proscribe the act later complained of had they thought to negotiate with respect to that matter. The implied covenant cannot be used to circumvent the parties' bargain, or to create a free-floating duty unattached to the underlying legal documents.
>
> An essential predicate for the application of the implied covenant is the existence of a "gap" in the relevant agreement. The implied covenant provides a limited gap-filling tool that allows a court to impose contractual terms to which the parties would have agreed had they anticipated a situation they failed to address.

Tygon Peak Cap. Mgmt., LLC v. Mobile Invs. Investco, LLC, No. CV 2019-0847-MTZ, 2022 WL 34688, at *24-25 (Del. Ch. Jan. 4, 2022),

reargument granted in part on other grounds, No. CV 2019-0847-MTZ, 2022 WL 414399 (Del. Ch. Feb. 10, 2022) (cleaned up).

Remembrance argues that Centazzo is attempting to add new terms to the Option Agreements and that Centazzo's claim fails because it is not related to a specific term of the Option Agreements. However, in the Amended Counterclaim, Centazzo alleges that, under the Option Agreements, Remembrance was required to negotiate the Assignment, Assumption, and Admission Agreement once exercising its option to purchase Centazzo's interests in the Operating Affiliates. (Doc. #1-1, p. 3 § 4; Doc. #39, ¶¶ 89-90.) Centazzo further alleges that Remembrance had an implied duty to negotiate the Assignment, Assumption, and Admission Agreement in good faith, which Remembrance did not do. For pleading purposes, Centazzo has plausibly alleged an implied covenant of good faith and fair dealing claim. The motion is denied with respect to Count III of the Amended Counterclaim.

    **E.   Count IV – Promissory Estoppel**

In Count IV of the Amended Counterclaim, Centazzo asserts a promissory estoppel claim. (Doc. #39, ¶¶ 106-112.) Centazzo alleges that Remembrance promised to work with Centazzo "to develop and equitable framework for the redemption of his comprehensive ownership interest in the Operating Affiliates and Remembrance," and that he relied on that representation by negotiating redemption in good faith. (Id. ¶ 107, 109.) Centazzo also alleges that

14

Remembrance changed its position by attempting to force Centazzo to relinquish all ownership "for no consideration and with no future safeguards against future liability." (Id. ¶ 110.)

Under Florida law, "[g]enerally stated, promissory estoppel is '[t]he principle that a promise made without consideration may nonetheless be enforced to prevent injustice if the promisor should have reasonably expected the promisee to rely on the promise and if the promisee did actually rely on the promise to his or her detriment.'" DK Arena, Inc. v. EB Acquisitions I, LLC, 112 So. 3d 85, 93 (Fla. 2013) (quoting Black's Law Dictionary 631 (9th ed. 2009)). The elements of a promissory estoppel claim include: "(1) a promise which the promisor should reasonably expect to induce action or forbearance, (2) action or forbearance in reliance on the promise, and (3) injustice resulting if the promise is not enforced." Bloch v. Wells Fargo Home Mortg., 755 F.3d 886, 889 (11th Cir. 2014) (quoting DK Arena, 112 So. 3d at 96).

Promissory estoppel does not apply in situations where a promise is not "sufficiently definite in time or term or reasonableness." Rekal Co. v. PGT Indus., Inc., No. 8:13-CV-1433-T-33TGW, 2013 WL 5487370, at *6 (M.D. Fla. Sept. 30, 2013) (quoting W.R. Grace & Co. v. Geodata Servs., Inc., 547 So. 2d 919, 924 (Fla. 1989)). Additionally, "a truthful statement as to the present intention of a party with regard to his future act" cannot support a claim for promissory estoppel." Id. (citing W.R. Grace & Co.,

15

547 So.2d at 924) (granting motion to dismiss promissory estoppel claims).

Remembrance argues that Centazzo's claim is too vague and indefinite to support a claim for promissory estoppel. The Court agrees. Centazzo generally asserts that Remembrance promised to "work with him to develop and equitable framework for the redemption of his comprehensive ownership interest in the Operating Affiliates[3] and Remembrance." (Doc. #39 ¶ 107). As alleged, this vague promise to "work with him" is too indefinite to enforce the promise by way of promissory estoppel. The motion to dismiss Count IV of the Amended Complaint is granted and Count IV is dismissed without prejudice. Centazzo will be granted one final opportunity to amend this count, if warranted.

### F. Count V, VI – Unjust Enrichment & Quantum Meruit

In Counts V and VI of the Amended Counterclaim, Centazzo asserts unjust enrichment and quantum meruit claims. (Doc. #39, ¶¶ 113-33.) Centazzo alleges that he provided consulting services to Remembrance past the expiration of the Advisory Services Agreement and provides an example list of benefits he provided to

---

[3] Redemption of Centazzo's interests in the Operating Affiliates is governed by the Option Agreements, which was previously discussed. E.g., Crmsuite Corp. v. Gen. Motors Co., No. 8:20-CV-762-WFJ-AAS, 2021 WL 914170, at *5 (M.D. Fla. Mar. 10, 2021) (applying Florida law) (granting motion to dismiss promissory estoppel claim brought as alternative to breach of contract).

16

Remembrance. (Doc. #39, ¶ 122.) Centazzo also alleges that Remembrance knew of and accepted Centazzo's services, but refused pay Centazzo for the benefits conferred.

"The doctrine of quantum meruit, also called a contract implied in fact, imposes liability, in the absence of an express agreement, based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words." F.H. Paschen, S.N. Nielsen & Assocs. LLC v. B&B Site Dev., Inc., 311 So. 3d 39, 48 (Fla. 4th DCA 2021) (quotation omitted). "'To satisfy the elements of quantum meruit, the plaintiff must prove that "the plaintiff provided, and the defendant assented to and received, a benefit in the form of goods or services under circumstances where, in the ordinary course of common events, a reasonable person receiving such a benefit normally would expect to pay for it.'" Id. (quoting W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc., 728 So. 2d 297, 305 (Fla. 1st DCA 1999)).

"An action for unjust enrichment (also called a contract implied in law or a quasi-contract), is not based upon the finding, by a process of implication from the facts, of an agreement between the parties." Id. "The elements of a cause of action for unjust enrichment are that: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted the benefit conferred; and (4) the

17

circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." Id. (citing Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc., 695 So. 2d 383, 387 (Fla. 4th DCA 1997).

Remembrance first argues that Centazzo cannot assert an unjust enrichment or quantum meruit claim because the claims are barred by express agreements between the parties. "As a general principle, a plaintiff cannot pursue an implied contract theory, such as unjust enrichment or quantum meruit, if an express contract exists." Id. (collecting cases). At this stage, the parties dispute whether the services Centazzo provided to Remembrance were governed by any express contact, valid or invalid, so the claims survive the motion to dismiss.

Remembrance also argues that Centazzo cannot recover because the unjust enrichment and quantum meruit claims require Remembrance's retention of any purported benefits to be "unjust." In Remembrance's view, as an owner of Remembrance, Centazzo also "benefited from any enrichment of Remembrance," so nothing is unjust. (Doc. #42, p. 20.) Based on the allegations in the Amended Counterclaim, there is a dispute of fact concerning Centazzo's own benefit, Remembrance's refusal to pay for Centazzo's services, and the unjust nature of Remembrance's retention of benefits, if any. The motion to dismiss Counts V and VII of the Amended Counterclaim is therefore denied.

Accordingly, it is now

**ORDERED**:

1. Remembrance's Motion to Dismiss (Doc. #42) is **denied** with respect to Counts I, III, V, and VI of the Amended Counterclaim. The Motion is **granted** with respect to Counts II and IV.

2. Counts II and IV of the Amended Counterclaim (Doc. #39) are **dismissed without prejudice**. Centazzo may file a Second Amended Counterclaim, inclusive of all counts, **within fourteen (14) days** of this Order, if warranted. Remembrance shall have fourteen (14) days thereafter to respond.

**DONE and ORDERED** at Fort Myers, Florida, this __4th__ day of May, 2022.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

19